IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

TIMOTHY LINCOLN,

    Petitioner,

v.

SACRAMENTO COUNTY
PROBATION, et al.,

    Respondent.

CASE NO. 07-CV-00689

ORDER

## INTRODUCTION

Petitioner Timothy Lincoln is currently on state probation under the supervision of Sacramento County Probation. He filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was found guilty by a jury of three counts of lewd and lascivious touching of his daughter. He contends that his conviction should be overturned because there were Sixth Amendment violations of his Confrontation Clause rights and because he was denied effective assistance of counsel. After considering the petition, respondent's answer, and the balance of the record, the court hereby finds and rules as follows.

## BACKGROUND

PDF created with pdfFactory trial version www.pdffactory.com

The facts of this case are set forth in the Third District Court of Appeal of California's decision, the relevant portion of which is summarized as follows:

> Defendant's wife, Elizabeth, was talking to their daughter, Christie (who was four years old at the time), about inappropriate touching. During this conversation Christie stated that her father had touched her in her private area "many" times. Elizabeth confronted defendant who admitted he had "rubbed" Christie five different times. He denied penetrating Christie's vagina. Thereafter, Sacramento County Deputy Sheriff Paul Jbeily interviewed Christie in the presence of her mother and asked Christie to point to the area where her father had touched her. Christie "kind of spread her legs and she pointed to her vaginal area."
>
> Following her interview with Deputy Jbeily, Christie was interviewed at the Multi-Disciplinary Interview Center (MDIC). During the interview, Christie said, "My daddy touched me in the private area" and explained it happened "a hundred times" when she was three years old and once when she was four years old. She also claimed that her father had touched his "own private" area in her presence.
>
> At trial, Christie testified about her father touching her. A videotape of the Christie's interview at the MDIC was also played for the jury and a transcript provided. Christie testified that she told the truth in the MDIC interview.

*People v. Lincoln*, 2006 WL 11337 (Cal.App.3 Dist., Jan. 3, 2006).

On February 11, 2004, a jury found petitioner guilty of three counts of lewd and lascivious touching of his daughter, involving three separation incidents, in violation of California Penal Code § 288(a). Petitioner filed a motion for a new trial on the grounds that his constitutional rights had been violated by the admission of Christie's MDIC videotaped interview into evidence. The motion was denied. The petitioner then renewed his motion for a new trial asserting ineffective assistance of counsel. This motion was also denied.

On July 6, 2004, the trial court sentenced petitioner to three years on count one, and two years on each of counts two and three, for an aggregate term of seven years in state prison. Execution of the sentence was suspended and petitioner was placed on 12 years of formal

2

PDF created with pdfFactory trial version www.pdffactory.com

probation with the conditions that he serve one year in the county jail, participate in both individual and family counselling, and register as a sex offender. Petitioner appealed to the California Court of Appeal, Third District, asserting the same grounds as he assets here. The Third District Court of Appeal affirmed petitioner's conviction and sentence. *People v. Lincoln*, 2006 WL 11337 (Cal.App.3 Dist., Jan. 3, 2006).

Petitioner timely petitioned the California Supreme Court for review and raised the same issues. Review was denied on March 29, 2006. Petitioner has not filed any state habeas corpus petitions and his federal claims have been exhausted. Petitioner timely filed his federal habeas petition with the United States District Court in the Eastern District of California on April 10, 2007. (Dkt. #1). The case was transferred to this court on January 22, 2009. (Dkt. #20). The matter is now ready for review.

## GROUNDS FOR RELIEF

Petitioner claims that he is entitle to relief because:

1. His Sixth Amendment Confrontation Clause rights were violated, and
2. He was denied effective assistance of counsel.

(Dk. #1 at 2).

## DISCUSSION

A. *Standard of Review*

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)

PDF created with pdfFactory trial version www.pdffactory.com

(emphasis added). The AEDPA established a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotations omitted). Only if the state court's decision does not meet the criteria set forth in § 2254(d)(1) does this court conduct a *de novo* review of the Petitioner's habeas claims. *Panetti v. Quarterman*, 551 U.S. 930 (2007).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

B.   *The Confrontation Clause*

Petitioner asserts that the trial court's admission into evidence of Christie's MDIC videotaped interview violated his Confrontation Clause rights. Petitioner concedes that he touched his daughter inappropriately but claims he did not do so with the requisite sexual intent. (Dkt. #1 at 17). Petitioner contends that the admission of the videotaped interview had a "substantial and injurious effect or influence in determining the jury's verdict" because it was the only evidence that petitioner had touched his "own private area"—evidence of petitioner's sexual intent in touching his daughter. (Dk. # 17 at 7). Petitioner also asserts that the MDIC interview formed the sole evidence for one of the three counts of lewd and lascivious touching for which

4

PDF created with pdfFactory trial version www.pdffactory.com

he was convicted. Petitioner raised this claim on direct review in state court. The Court of Appeal found petitioner's claim without merit.[1] The Court found that:

> [B]ecause [Christie] appeared at trial and was subject to cross-examination, there was no Confrontation Clause violation in the admission of her out-of-court statements made in the MDIC interview.

*People v. Lincoln*, 2006 WL 11337 at *4.

The state court's adjudication of petitioner's Confrontational Clause claim is consistent with applicable federal law on this issue. Christie took the stand and testified about the sexual contact with petitioner. Petitioner's counsel had the opportunity to cross-examine Christie regarding the molestation. As such, the use of her prior out-of-court statements did not violate petitioner's Confrontation Clause rights.[2] *Crawford*, 541 U.S. at 59, fn. 9.

Nevertheless, petitioner argues that the Confrontation Clause is not concerned solely with the right of cross-examination, rather it encompasses the right of defendant to face his accuser and to require his accuser to level her accusation in open court in the presence of the jury. Therefore, petitioner argues, when the court in *Crawford* suggested that Confrontation Clause concerns fade away when hearsay declarants testify, the court is referring to circumstances when the declarant testifies to the substance of the out-of-court statements. As such, because portions of Christie's videotaped interview were admitted into evidence that did not overlap with her in-court testimony, petitioner's Confrontation Clause rights were violated.

In support of his interpretation of *Crawford*, petitioner points to the Washington State Supreme Court case, *State v. Rohrich*, 132 Wn.2d 472 (1997). In *Rohrich*, the child-victim was called to the stand by the prosecutor, but was examined only on general background information

---

[1] The California Supreme Court adopted this reasoning by issuing a silent denial. *See Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) citing *YIst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991).

[2] Respondent concedes that Christie's MDIC interview was testimonial in nature.

5

PDF created with pdfFactory trial version www.pdffactory.com

and not on the sexual abuse allegations which were the subject of the litigation.[3] *Id*. at 474-75. Thereafter, the child's hearsay statements relating to the sexual abuse were admitted into evidence. *Id*. at 475. The Washington Supreme Court found that this procedure violated the Confrontation Clause. *Id*. at 481. The Court held that "[t]he opportunity to cross-examine means more than affording the defendant the opportunity to hail the witness to court for examination. It requires the State to elicit the damaging testimony from the witness so that defendant may cross-examine if he so choose." *Id*. at 478 citing *Shaw v. Collins*, 5 F.3d 128, 132, n. 7 (5th Cir. 1993). Petitioner also points to two other Washington cases decided after *Rohrich*. In *State v. Clark*, 139 Wn.2d 152 (1999) the Washington Supreme Court distinguished declarants who could not recollect the subject matter of the hearsay statements from those who simply were not examined about the factual underpinnings of such statements. Thus, *Clark* held that the declarant must be asked specifically about the subject matter of the hearsay statements to satisfy the Confrontation Clause. *Id*. at 159. Further, the Court *In re Pers. Restraint of Grasso*, 151 Wn.2d 1 (2004) recognized its holding in *Rohrich* that "the opportunity to cross-examine means more than simply the opportunity to hail the witness into court; the State [must] elicit the damaging testimony from the witness…[.]" *Id*. at 14.

However, each of these cases was decided prior to the United States Supreme Court's decision in *Crawford*, which, as noted, asserted that "when the declarant appears for cross-examination at trial, the confrontation clause places *no constraints at all* on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59, fn.9 (emphasis added). The court notes that the only federal precedent cited by petitioner also pre-dates *Crawford*.

---
[3] Washington State's child hearsay statute, RCW 9A.44.120, substantially mirrors California's Section 1360.

PDF created with pdfFactory trial version www.pdffactory.com

Petitioner argues that this is not a case in which the witness cannot recall the alleged incident, rather this is a situation where the prosecution failed to ask Christie about "one specific incident of touching she described" during the MDIC interview. (Dk. # 17 at 6). In addition, the prosecution did not ask her about her statement that the petitioner touched his "own private area." *Id*. However the petitioner contradicts this contention in his petition in which he states:

> It is true that the prosecutor asked Christie about other incidents after she described the specific incident she said occurred when she was four on her first day of testimony and she replied that she could not recall. However, the prosecutor did not leave it at that; the next day he again asked her if the incident she had described the day before was the only incident of touching, to which she responded, '[n]o.' The prosecutor abruptly ended his examination and did not question her further regarding the details of any such other incident.

(Dkt. #17 at 6) . While it may be true that the prosecutor did not parse out the details of the other incidents of sexual abuse, by petitioner's own admission, Christie did make clear during her in-court testimony that there were other incidents. Petitioner's counsel had the opportunity to question Christie about these other incidents, as well as her videotaped interview, during cross-examination. Therefore, petitioner had an adequate opportunity to cross-examine Christie, thereby defeating his Confrontation Clause challenge. *See United States v. Kappell*, 418 F.3d 550, 556 (6th Cir. 2005) (admission of child-witnesses' out-of-court statements did not violate the Confrontation Clause). In sum, petitioner has failed to show that the state court decision rejecting his claim based on the Confrontation Clause of the Sixth Amendment is contrary to, or an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

C. <u>*Ineffective Assistance of Counsel*</u>

To demonstrate ineffective assistance of counsel, petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one in which

7

PDF created with pdfFactory trial version www.pdffactory.com

counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions. Indeed, the Supreme Court admonished in *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted):

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable…Because of the difficulties inherent in making the evaluation [of counsel's performance], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

The sole disputed element during petitioner's trial was whether he had the requisite sexual intent when he touched his daughter. As such, petitioner argues that the question of where he touched his daughter is significant. Petitioner contends that the evidence presented at trial was ambiguous on this point. At trial, the prosecutor asked Christie if her father touched her "where the pee comes out" of her body and she replied, "Well, he touched right over it, like right on top…[.]" *People v. Lincoln*, 2006 WL 11337 at *6. She described the area as her "private area," as "under her underwear," and as "between her belly button and legs." *Id*. Christie's demonstration of where her father touched her during the MDIC videotaped interview is not visible on screen.

PDF created with pdfFactory trial version www.pdffactory.com

Petitioner asserts that after the verdict in this case, Christie began counseling with a licensed family counselor who specializes in inter-family abuse. Petitioner claims that during therapy, Christie demonstrated to the counselor that her father touched her in the area below her waist, but above her pubic area. Petitioner claims that had his counsel employed a "trained, unbiased professional…to question Christie in a safe, objective setting…prior to trial, he would have known how Christie would respond upon being questioned specifically at trial." (Dkt. #1 at 34). Petitioner argues that his counsel's failure to obtain such a statement from Christie prior to trial resulted in "his need to avoid clarification from Christie at trial and thus lose the strongest form of evidence that the touching was not on Christie's genitalia." *Id.*

Petitioner raised this claim to the trial court in a motion for new trial, and again to the Court of Appeal and Supreme Court of California on direct appeal. It was rejected each time. Specifically, the Court of Appeal found:

> [T]rial counsel reasonably could have concluded he had little to gain and much to lose by arranging for an independent interview of C.L. The defense had been in contact with E.L. and, therefore, presumably knew of her impending testimony that C.L. had demonstrated to her that defendant had put his hand under her belly button and rubbed the area. The defense also presumably knew of the MDIC interview in which C.L. stated defendant had touched her in "the private area." C.L.'s statement at the MDIC interview and the demonstration to her mother still allowed trial counsel to argue defendant did not touch C.L.'s vagina, but, rather, touched her in the area closer to her belly button, bolstering defendant's position that he did not touch C.L. with the requisite sexual intent.
>
> On the other hand, if C.L. had been interviewed by an expert to determine exactly where defendant touched her, C.L. might have indicated defendant had touched her vagina. Indeed, she so indicated to Deputy Jbeily. While defendant is correct that trial counsel would not have had to disclose C.L.'s statement if unfavorable, counsel reasonably could have concluded that additional questioning could focus C.L.'s attention on the precise location where she was touched and, therefore, she might be more likely to reveal information detrimental to defendant during trial.

9

PDF created with pdfFactory trial version www.pdffactory.com

> Because trial counsel could have had these reasonable tactical reasons for failing to have C.L. interviewed, defendant's claim of ineffective assistance of counsel fails. (Citations omitted).

*Lincoln*, 2006 WL 11337 at *12-*13.

Petitioner responds that it was not a sound tactical decision to avoid learning what Christie would say if specifically questioned regarding where her father touched her. First, he contends, it is always best for trial counsel to know what a witness is likely to say, and second, even if Christie's responses had been unfavorable, his counsel did not need to disclose her responses. Petitioner further argues that the Court of Appeal's contention that his counsel may have made a tactical decision to not interview Christie so as not to "focus [Christie's] attention on the precise location where she was touched and, therefore, she might be more likely to reveal information detrimental to defendant during trial" is purely speculative. Dkt. #1 at 38. Finally, petitioner asserts that the Court of Appeal's reliance on Deputy Jbeilly's statement as evidence that petitioner touched Christie on the vagina was unfounded. Deputy Jbeilly's testimony, petitioner argues, was at best ambiguous because the Deputy merely stated that when asked where her father touched her, Christie pointed to her vaginal area, without indicating where her hand was or how she pointed.

Petitioner's claim is without merit. He has failed to show that but for counsel's alleged failure to properly investigate Christie's testimony, the outcome of his trial would have been different, as the *Strickland* prejudice prong requires. *See* 466 U.S. at 694. Both the trial court and Court of Appeal described the evidence of sexual intent as "overwhelming, even if the contents of [the counselor's] declaration had been admitted into evidence." *Lincoln*, 2006 WL at *11.

In addition, decisions related to trial strategy are given great deference under *Strickland*. As the Court of Appeal concluded, petitioner's counsel had sound tactical decisions for failing to

PDF created with pdfFactory trial version www.pdffactory.com

have Christie interviewed by a licensed therapist. Accordingly, petitioner fails to show either deficient performance or prejudice under *Strickland*. The state court decision rejecting this claim is not objectively unreasonable, and petitioner's claim that counsel was ineffective must be denied.

## CONCLUSION

Based on the foregoing discussion, the court denies petitioner's petition for writ of habeas corpus. The case is hereby dismissed.

DATED this 13th day of April, 2009.

        /s/ Barbara Jacobs Rothstein
Barbara Jacobs Rothstein
U.S. District Court Judge

PDF created with pdfFactory trial version www.pdffactory.com